UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

JAMES DOUGLAS SCOTT,

                    Defendant.

NO. CR-09-0131-EFS

**ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL AND
JUDGMENT OF ACQUITTAL**

     A hearing occurred in the above-captioned matter on March 23, 2011.
Defendant James Douglas Scott was present, represented by Robert Fisher.
United States Attorney K. Jill Bolton appeared on the United States
Attorney's Office's (USAO) behalf.  Before the Court was Defendant's
Motion for a Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29 (c)
and Motion for New Trial Pursuant to Fed. R. Crim. P. 33 (ECF No. 422).
After reviewing the submitted materials and relevant authority and
hearing oral argument, the Court was fully informed and denied
Defendant's motion.  This Order memorializes and supplements the Court's
oral rulings.

                    **BACKGROUND**

     On August 19, 2009, James Douglas Scott was brought to the Veterans
Affairs Medical Center (VAMC) in Spokane, Washington for treatment for

ORDER ~ 1

his excessive alcohol consumption.  While at the VAMC, he assaulted Nurses James Hoffman and Malcolm Best.  His blood alcohol content was .38.  (ECF No. 442, at 182 & 189-90.)  On September 10, 2009, the United States filed a criminal complaint (ECF No. 1) against Mr. Scott, charging him with two counts of Assault by Inflicting Bodily Injury on Federal Employees, in violation of 18 U.S.C. §§ 111(a) and (b), which was later formalized in an Indictment (ECF No. 25).  Trial commenced on January 10, 2011.  On January 21, 2011, Mr. Scott was found guilty on both counts. He is now in the U.S. Marshal's custody pending his sentencing scheduled for April 21, 2011, at 1:30 p.m. in Spokane. From complaint to trial, this case consumed twenty-eight months of litigation.

**A.    The Assault**

On the evening of August 19, 2009, Nurses Hoffman and Best were on duty and working at the VAMC.  (ECF No. 442, at 271-73; ECF No. 443, at 367-68.)  At trial, Nurse Hoffman testified as follows (ECF No. 442, at 276-80; 338-39):  Nurse Hoffman first saw Mr. Scott walking down the emergency-room hallway, trying doors. Because Mr. Scott was intoxicated, Nurse Hoffman assumed he needed to use the restroom, and asked Mr. Scott if he "needed to take a leak."  Mr. Scott said nothing but went to the back door of the emergency room.  Nurse Hoffman said "Let's go back to the bed . . . You'd probably rather go back to bed with me than with one of the police."  Nurse Hoffman wanted Mr. Scott to return to bed so that he could "start an IV on him" and get a physician to review his condition.  Mr. Scott then turned around and head-butted Nurse Hoffman in the chest.  Nurse Hoffman let Mr. Scott push him back but then picked up Mr. Scott's hips by his pelvis, "lowered him down to the floor," and

called for help.  Other staff members came to his aid.  Dr. Molly Hutsinpiller convinced Mr. Scott to go peacefully back to bed.  During the altercation, Nurse Hoffman re-tore his rotator cuff.

A short time later, Nurse Hoffman saw Mr. Scott, who was back in bed, grab Nurse Best by the neck, placing his foot in Nurse Best's mid-section.  Nurse Hoffman approached to help; he pulled Mr. Scott's finger back to his thumb and told him: "I will break the motherfucker . . . ." Because he was a safety risk to himself and others, Dr. Hutsinpiller ordered Mr. Scott restrained with four-point restraints.

Nurse Best testified at trial as follows (ECF No. 443, at 373-83): Nurse Best first noticed Mr. Scott pushing against Nurse Hoffman in the hallway.  Nurse Best approached, grabbed hold of Mr. Scott's ankles, lifted them in the air, and flattened Mr. Scott to the ground.  He then crossed Mr. Scott's legs and knelt on his knees, pressing on his lower back to keep leverage so that he could not move.  Mr. Scott returned to bed.  A short time later, Nurse Best saw Mr. Scott scooting forward in his bed; Nurse Best told Mr. Scott not to get out of bed, and went to retrieve a blanket for Mr. Scott because he appeared cold.  Upon his return, Mr. Scott began to kick at Nurse Best, which Nurse Best deflected with a chart; Mr. Scott then grabbed Nurse Best by the throat, causing injury.

At trial, defense counsel asked several VAMC employees if they were aware of any polices allowing nurses to hold Mr. Scott at the ER if he wanted to leave.  No VAMC employee could identify such a policy, so long as the patient was not deemed a threat to himself or others.  The VAMC employees agreed that, according to VAMC policies, staff nurses do not

have authority to physically restrain a patient without a doctor's finding that the patient is a threat to himself or others. (ECF No. 442, at 263-65 (Triage Nurse Gary Syme); ECF No. 443, at 455 (Nurse Best); ECF No. 444, at 794-803 (Administrative Officer Katherine Courts).) Yet Dr. Hutsinpiller stated,

> if we release an intoxicated person, they may get out and get hit by a car . . . go out and get hurt, go out and fall in the snow and die of hypothermia, go get in a fight . . . so we try and reason with [the patient] and we try and be calm and encourage them to stay and work with us, we want to help, we're on their side.

(ECF No. 44, at 715.)

## B.   The Insanity Defense and Expert Testimony

Among the most heavily-litigated issues was the admissibility of expert testimony concerning Mr. Scott's temporary-insanity defense under Federal Rule of Criminal Procedure 12.2(b). Recognizing that voluntary intoxication is not a cognizable legal defense to the general intent crime of assault, *see United States v. Vela*, 624 F.3d 1148, 1154 (9th Cir. 2010), Mr. Scott sought to prove that his Post-Traumatic Stress Disorder (PTSD) drove him to become *involuntarily* intoxicated, which in turn rendered him temporarily insane at the time of the offense or otherwise unable to formulate the general intent necessary to assault. *See* 18 U.S.C. § 17(a) (insanity defense); *United States v. Jim*, 865 F.2d 211, 215 (9th Cir. 1989) (recognizing that § 111(b) is a general intent crime).

To prove this theory, the defense team retained three experts. Dr. Stanulis was retained to opine, in part, on whether individuals who suffer from PTSD involuntarily self-medicate to prevent episodes. Dr.

ORDER ~ 4

Julien was retained to opine about the effects of acute intoxication on the brain: that a person with Defendant's substance-abuse history and a .38 blood alcohol content could not have formed intentional, knowledgeable activity.  Finally, Dr. Brown was retained to opine that Defendant's extensive training as an Army Ranger made him involuntarily and violently respond to a perceived threat.    After three *Daubert* evidentiary hearings to determine the admissibility of this expert testimony, the Court allowed testimony from Drs. Stanulis and Julien, but not Dr. Brown.  The Court issued a detailed Order memorializing these rulings and defined the areas for which the experts could testify with particularity.  (ECF No. 369.)

Despite the Court's clear parameters for expert testimony on the insanity issue, on January 18, 2011, the beginning of the second week of trial, Mr. Scott moved to introduce a January 17, 2011 letter written by Dr. Bradley L. Warren, Mr. Scott's treating psychiatrist at New Directions facility in Los Angeles, as evidence at trial.  Dr. Warren's opinions in that letter offered as an exhibit for use by Dr. Stanulis read:

> I have examined Mr. Scott.  It is my opinion to a reasonable degree of medical certainty that Mr. Scott's alcohol abuse is caused by Post Traumatic Stress Disorder, Bipolar Disorder, or a combination of [the two].

(ECF No. 449, Ex. A.)  The Court denied Mr. Scott's request.

At trial, Mr. Scott called several witnesses who testified as to Mr. Scott's sustained, excessive alcohol consumption.  One, Margaret Fritz, the VAMC addiction therapist who counseled Mr. Scott over the course of several years, referred to the Diagnostic and Statistical Manual on

Mental Disorders (DSM-IV) in describing the criteria for diagnosing Substance Abuse Disorder. (ECF No. 444, at 868-903.) The USAO referred to the DSM-IV as well, but in connection with a PTSD diagnosis. *Id*. at 908-13. No lay or expert witness testified that Mr. Scott's chronic alcoholism - Substance Abuse Disorder - was the cause of his temporary insanity.

The jury began deliberating on January 20, 2011. Instruction No. 19 summarized the law surrounding voluntary intoxication and the insanity defense:

> The effects of the voluntary use of alcohol do not constitute, nor may they give rise to a severe mental disease or defect. The voluntary use of drugs or alcohol also must be disregarded in determining whether the Defendant could appreciate the nature and quality of his acts or the moral wrongfulness of his acts. If, however, you find that at the time in issue the Defendant had a severe mental disease or defect which caused him to involuntarily consume alcohol and gave rise to an inability to appreciate the nature and quality or moral wrongfulness of his acts, then the Defendant's subsequent consumption of alcohol cannot preclude his defense of insanity.
>
> Thus, if the Defendant claims he became insane because he voluntarily ingested alcohol, the insanity defense is not available to him. If, on the other hand, he claims that a severe mental disease or defect caused him to become involuntarily intoxicated, the defense is not taken from him.

(ECF No. 401.)

During deliberations, the jury submitted a note to the Court:

> Substance Abuse Disorder is a diagnosis in the DSMIV. In the context of Instruction No. 19, can alcoholism be concluded to be a severe mental disease or defect by itself and cause a person to involuntarily consume alcohol?

(ECF No. 406.)  The Court answered "No."  (ECF No. 407.)

//

//

ORDER ~ 6

/

## DISCUSSION

Defendant moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) or, in the alternative, for a new trial pursuant to Rule 33.   The USAO opposes both motions.

**A.    Motion for Judgment of Acquittal**

Mr. Scott argues, pursuant to Rule 29, that he is entitled to judgment of acquittal because the USAO failed to prove that the two nurses were assaulted while performing their official duties.

Rule 29(c) permits a defendant to move for judgment of acquittal within fourteen days after a guilty verdict has been entered.   Fed. R. Crim. P. 29(c)(1).   Upon such motion, a court may "set aside the verdict and enter an acquittal."   *Id*. at 29(c)(2).   When determining whether acquittal is appropriate after a guilty verdict, a court considers whether, viewing the evidence in the light most favorable to the USAO, any rational trier of fact could find Defendant guilty beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Rocha*, 598 F.3d 1144, 1157 (9th Cir. 2010).

18 U.S.C. § 111 provides:

> (a) In general. – Whoever – . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
> (b) Enhanced penalty. – Whoever, in the commission of any acts described in subsection (a) . . . inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

ORDER ~ 7

Thus, to convict, the USAO must have proven beyond a reasonable doubt that: 1) on or about August 19, 2008, VAMC registered nurses James Hoffman and Malcolm Best were officers or employees of the United States; 2) Defendant forcibly assaulted Nurses Hoffman and Best; 3) Defendant did so while they were engaged in, or on account of, their official duties; and 4) Defendant inflicted bodily injury.  9th Cir. Crim Jury Instr. 8.4.

Mr. Scott claims that the two nurses employed unauthorized physical intervention when they restrained Mr. Scott and, thus, they were not "engaged in" or acting "on account of" their official duties.  18 U.S.C. § 111(a) & (b).  For § 111 purposes, "[t]he test of a Government agent's conduct is whether he is acting within the scope of what he is employed to do, as distinguished from engaging in a personal frolic of his own." *United States v. Juvenile Female*, 566 F.3d 943, 950 (9th Cir. 2009) (quoting *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir. 1983)).

Viewing the facts in a light most favorable to the USAO, the Court concludes that a reasonable trier of fact could only have concluded that Nurses Hoffman and Best were assaulted while engaged in or acting on account of their official duties.  Mr. Scott had been to the VAMC emergency room many times before.  That night, he arrived and agreed to treatment.  Although Mr. Scott was not initially assessed as a threat to himself or others, the evidence indisputably shows that he assaulted both nurses.  Nurse Hoffman saw Mr. Scott, a highly intoxicated, possibly suicidal individual who had agreed to treatment, wandering down the hallway.  In the first incident, Nurse Hoffman, who was encouraging Mr. Scott to return to bed, was charged at and head-butted by Mr. Scott.  In

ORDER ~ 8

the second incident less than an hour later, Nurse Best, who had offered to get Mr. Scott a warm blanket, was kicked, grabbed by the neck, and choked by Mr. Scott.  In both instances, the nurses were attempting to attend to Mr. Scott, an acutely intoxicated patient who had agreed to treatment.  Both times, Mr. Scott attacked, and the nurses attempted to prevent physical harm to themselves and Mr. Scott, a patient.  Both nurses sustained injury as a result.  Accordingly, nothing in the record suggests that the nurses were acting outside the scope of their employment when they were assaulted.

**B.   Motion for New Trial**

Mr. Scott moves under Rule 33(a)[1] for a new trial, claiming the Court erred in responding to a question submitted by the jury during deliberations and denying his request to refer to Dr. Warren's letter at trial.

1.   Answer to Jury Question

To prove the affirmative defense of insanity, a defendant must establish, by clear and convincing evidence, that "as a result of a severe mental disease or defect, [he] was unable to appreciate the nature and quality or the wrongfulness of his acts."  18 U.S.C. § 17(a), (b).

It is well-settled that "voluntary intoxication combined with a mental disease will not support an insanity defense."  *United States v. Knott*, 894 F.2d 1119, 1123 (9th Cir. 1990).  Thus, for the insanity

---

[1]  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).

ORDER ~ 9

defense to be available, the intoxication must have been beyond the defendant's control: if the defendant can resist taking the first sip, then it is not available to him. *See id.* at 1122. A defendant may, however, prove the defense if he can show that his mental disease compelled him to drink involuntarily, causing a condition amounting to insanity. *United States v. Henderson*, 680 F.2d 659, 664 (9th Cir. 1982); *United States v. Burnim*, 576 F.2d 236, 237 (9th Cir. 1978) (holding that a court must determine whether a defendant would have been insane at the time of the offense without voluntary intoxication). The Court instructed the jury consistent with these principles.

The testimony at trial focused on the defense's theory that Mr. Scott's PTSD, not his alcoholism, caused him to involuntarily consume alcohol to the point of temporary insanity. In fact, there was no testimony that Mr. Scott drank alcohol because he was a chronic alcoholic; rather, all relevant defense testimony was that his PTSD caused him to self-medicate using alcohol. The jury submitted the following question:

> Substance Abuse Disorder is a diagnosis in the DSMIV. In the context of Instruction No. 19, can alcoholism be concluded to be a severe mental disease or defect by itself and cause a person to involuntarily consume alcohol?

(ECF No. 406.) The Court answered that question with a simple "No." (ECF No. 407.)

Mr. Scott argues that the Court's response to the jury question was inappropriate: rather than "No," the Court should have instructed that Substance Abuse Disorder can be a severe mental disease or defect, but

ORDER ~ 10

whether it can cause a person to involuntarily consume alcohol is a question for the jury to decide.  The Court disagrees.

First, while a jury could conclude that Substance Abuse Disorder, a DSM-IV diagnosis, is a "severe mental disease or defect," based on trial evidence, there was no lay or expert testimony to that effect.  The only witness who testified regarding Substance Abuse Disorder, VAMC addiction therapist and Mr. Scott's treating counselor Margaret Fritz, was not questioned for that purpose.  Nor would she have been qualified to render such an opinion: she was not identified as a Rule 12.2(b) and 16(b)(1)(C) expert, was not called by Mr. Scott at the *Daubert* hearings, and thus, could not render expert opinions.

Second, the jury's legal question was properly answered in the negative.  The crux of the jury's question was whether alcoholism, by itself, can cause a person to involuntarily consume alcohol for insanity purposes.  The case law is entirely clear that it cannot.

It is well-settled that criminal responsibility attaches to voluntary alcoholic ingestion.  *Knott*, 894 F.2d at 1121-1122.  Thus in the context of the insanity defense, courts disregard any alcohol consumption that was voluntary.  *Burnim*, 576 F.2d 237-38.  The parties have not cited, and the Court cannot find, any binding or persuasive authority indicating that alcohol use alone can be a severe mental disease or defect for insanity purposes.  *See Knott*, 894 F.2d at 1121 (considering the combination of schizophrenia and voluntary use of intoxicants); *Burnim*, 576 F.2d at 237 (considering the combination of organic brain defect and voluntary intoxication); *Kane v. United States*, 399 F.2d 730, 734-36 (9th Cir. 1968), *cert. denied*, 412 U.S. 920 (1973)

(finding defendant who was schizophrenic and susceptible to intoxication remained responsible for actions caused in part by voluntary intoxication).

Rather, courts have been unwilling to conclude that a defendant's chronic alcoholism, by itself, compelled him to drink involuntarily, such that it could cause a condition amounting to insanity. *See Powell v. Texas*, 392 U.S. 514 (1968) ("We are unable to conclude, . . . on the current state of medical knowledge, that chronic alcoholics . . . suffer from such an irresistible compulsion to drink . . . that they are utterly unable to control their [consumption]."); *Kane*, 399 F.2d 730, 736 n.9 (finding no evidence that the defendant was a chronic alcoholic such that he could not prevent himself from drinking), *United States v. Shuckahosee*, 609 F2d 1351, 1355 (10th Cir. 1979) ("This court, and other courts, have been unwilling to treat evidence of alcoholism, standing alone, as sufficient to raise the insanity issue.").

The Court recognizes that the Ninth Circuit and Supreme Court case law discussing the voluntariness of a chronic alcoholic's criminal acts is several decades old. But it appears to be binding precedent. Indeed, the Court was unable to find any recent authority addressing this exact issue: whether for purposes of the insanity defense, Substance Abuse Disorder, now a DSM-IV diagnosis, is a "severe mental disease or defect" that can cause a person to involuntarily consume alcohol to the point of insanity. It may be that the medical landscape has changed such that Substance Abuse Disorder is now known to cause involuntary intoxication. However, with the current binding precedent, and the utter absence of any evidence on this point at trial, the Court concludes that alcohol

ORDER ~ 12

dependence is not a severe mental disease or defect upon which an insanity defense may excuse criminal conduct undertaken while the defendant was intoxicated.  Thus, the Court's answer of "no" was a correct statement of law and correctly guided the jury's deliberations. The interests of justice do not require a new trial.

### 2. Dr. Warren's Letter

Defendant argues that the Court erred when it prohibited Mr. Scott from either 1) introducing Dr. Warren's letter as an exhibit, or 2) allowing Dr. Stanulis to refer to this letter in his testimony.  A defendant who intends to introduce evidence relating to a mental disease or defect bearing on the issue of guilt must notify the USAO of such intent.  Fed. R. Crim. P. 12.2(b).  He must also provide the USAO with a written summary of any expert testimony on the defendant's mental condition, including 1) the witness's opinions; 2) the bases and reasons for those opinions; and 3) the witness's qualifications.  *Id.* 16(b)(1)(C).  A district court has discretion to compel disclosure of such expert information.  *United States v. W.R. Grace*, 526 F.3d 499, 513 (9th Cir. 2008) (holding that a court order requiring expert disclosures to identify the information the expert reviewed in preparing the report was within the requirement for disclosing "the bases and reasons for those opinions").

Federal Rule of Evidence 702 governs the admission of "expert testimony":

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1)

> the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2010). Once a proffered expert's testimony is challenged, the district court has a "gatekeeping responsibility" to ensure the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. 579; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997).

Having not been disclosed until the second week of trial, Dr. Warren's letter was not disclosed as required by Rule 16(b)(1)(C). Nor was it subjected to *Daubert*'s probing relevance and reliability test, which the Court undertook over the course of three evidentiary hearings held to determine the admissibility of expert testimony. The defense team closely monitored the treatment Mr. Scott had been receiving at New Directions for over a year. At no point did the defense experts or defense counsel supplement or amend their Rule 16 summary or reports to include any opinions regarding Mr. Scott's Bipolar Disorder. Given the late stage at which Dr. Warren's letter was presented and without any showing of relevance or reliability, the Court did not err in excluding Dr. Warren's letter regarding Mr. Scott's Bipolar-Disorder diagnosis and prohibiting any reference to the conclusions made therein. The interests of justice do not require a new trial.

For the reasons set forth above, **IT IS HEREBY ORDERED**: Defendant's Motion for a Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(c)

1  and Motion for New Trial Pursuant to Fed. R. Crim. P. 33 **(ECF No. 422)**

2  is **DENIED.**

3      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

4  this Order and to provide copies to all counsel.

5      **DATED** this_7th____ day of April 2011.

6

7                      _____s/Edward F. Shea_____
                            EDWARD F. SHEA
8                     United States District Judge

9
   Q:\Criminal\2009\131.New.Trial.Acquit.wpd
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 15